[Civ. No. 20173. Third Dist. Feb. 26, 1982.]

In re the Marriage of JESSIE E. and J. C. RIVES.
J. C. RIVES, Appellant, v.
JESSIE E. RIVES, Appellant.

COUNSEL

Carol E. Hawes for Appellant Husband.

Desmond, Miller, Desmond & Bartholomew, Stephen James Wagner, Muenzberg & Thomson and James S. Thomson for Appellant Wife.

OPINION

REYNOSO, J.*—J. C. Rives (husband) appeals from an interlocutory judgment of dissolution of marriage entered after protracted dissolution

*Assigned by the Chairperson of the Judicial Council.

proceedings. Jessie E. Rives (wife) cross-appeals from the judgment. Among other things, the interlocutory judgment awarded the parties' community property queen bee business, known as "Rives Queens," to husband, and awarded the parties' community property queen bee cage business, known as "Rives Cages," to wife. The judgment ordered that the real property upon which the parties' residence and both businesses were located be partitioned into three parcels, two of which were awarded husband and one of which was awarded wife. The judgment further held that a parcel of residential property acquired during the marriage in wife's name alone was in fact community property, and awarded that property to wife.

On appeal husband makes several contentions regarding the queen bee business. He contends that the court used an improper method in valuing the business, that the court erred in determining that there was goodwill in the business, that since he did not want the business it should have been sold and the proceeds divided, that the court erred in refusing to reopen after submission but prior to entry of the judgment to consider the devaluation of the business due to wife's neglect, and that since wife asked for and received a pretrial order granting her the exclusive right to operate the business and barring him therefrom she should be charged with the loss of value of the business due to her failure to feed the bees and their resulting death. Husband also contends that the trial court erred in setting a value on the cage business and in refusing to reopen to revalue the real property when it appeared that the county would not permit a partition in kind.

In the cross-appeal wife contends that the trial court erred in failing to retain jurisdiction to make an award of spousal support, and in finding that certain residential property was not her separate property.

We hold that the trial court failed to consider proper factors in valuing the queen bee and queen bee cage businesses and in refusing to reopen the case to consider the damage to the bee business which occurred before the interlocutory judgment was issued. We find that in view of the inordinately high valuation of the queen bee business the court's award of that business to the husband created an unequal and unfair division of the community property. We reverse and remand for reconsideration of the value of the businesses and the division of the community property. We find no other error and affirm the judgment in all other respects.

THE RIVES QUEENS

Since 1931, in addition to his job as a county agricultural inspector, husband has been involved in the business of bee keeping. His specialty is raising queen bees, and he is recognized as a leading specialist in the industry. Husband retired from county service in 1970, and since that time his sole employment has been in the Rives Queens and Rives Cages businesses. Prior to the parties' marriage in 1971, husband acquired six acres of property known as the Oregon Trail property. He made certain improvements and placed a trailer home on the property prior to marriage. After marriage the parties further improved the property and built a "Butler building" on the premises to house the cage business.

For a number of years prior to their marriage wife worked in the bee and cage business for husband as an employee. In the late 1960's husband went through a dissolution proceeding, and as an indirect result declared bankruptcy. At that time he transferred the cage business to wife. After the parties were married in 1971 wife ceased to receive wages or other benefits. The parties continued to operate both businesses, with wife's primary responsibility being the cages and husband's primary responsibility being the bees, although each assisted the other to an extent.

In 1976, the parties attempted to transfer both businesses to wife's son by a prior marriage. In 1977 the attempted sale failed and the parties reacquired the businesses. The petition for dissolution of marriage was filed on February 14, 1979. Therein husband requested that the court confirm the Rives Queens business as his separate property. In her response wife requested that the court confirm the Rives Queens business as her separate property. Apparently neither party was treating the two businesses separately at that time.

The proceedings were bifurcated. In an initial hearing the trial court held that both businesses are community property. The proceedings were then adjourned so that the parties could attempt to arrive at a settlement concerning the valuation of the property and an appropriate division thereof.

Initially during the proceedings the parties continued to live together in a mobile home they had purchased, and continued to operate the businesses. Their relationship was, however, what can mildly be de-

scribed as stormy. The parties appeared numerous times in court for orders and injunctions against each other. On October 24, 1979, wife filed an order to show cause asking that she be allowed to operate the businesses pending trial or settlement, and that husband be ordered to vacate the premises. In response to the order to show cause husband stated that he is more capable of operating the businesses than wife, but that he "is willing to allow respondent to operate the businesses during the pendency of this action but on condition that she be ordered to account strictly for such operation and that any loss of value of the business during such operation by her shall be charged to her in the community property distribution." When the matter came on for hearing it was stipulated that wife would be allowed to operate the businesses and that husband could accompany his agent to examine the books of the businesses, but was otherwise to stay out of the business area.

Due to a number of continuances at wife's request, the matter did not come on for trial until March 14, 1980. Each party presented the testimony of a certified public accountant in evaluating the businesses. Each of the experts relied upon a value of the physical assets of the queen bee business of $39,185 and that figure is not disputed except as to the issues involving destruction of the business. Wife's expert witness set the value of the bee business at between $94,000 and $134,000. His valuation included physical inventory of $39,185, land worth $15,000, and goodwill between $39,815 and $79,815. He concluded that a proper evaluation of the bee business would be $112,000. His evaluation was not based upon historical income data, but was rather based upon a potential income approach, that is, he estimated what he considered the business should or could produce, and determined potential income at the highest seasonal price from that figure. He derived the value of goodwill by deducting expected expenses, return to capital, and the operator's labor from the potential income and by capitalizing the remainder as attributable to goodwill.

Husband's witness valued the queen bee business at $52,657. This consisted of physical assets of $39,185, and goodwill of $13,472. He did not add a value for the land, which was itself before the court for division. His goodwill value was lower than that of wife's witness because he based it upon actual historical production rather than estimated potential production. In 1979 Rives Queens had only produced 12,000 queen bees, while wife's witness was charging them with over 18,000 queen bees per season, a difference which would drastically increase

profit and therefore goodwill. The potential production approach was criticized because it did not take into account husband's advanced age and asserted desire to retire.

Wife testified that she did not want the bee business because she had neither the strength nor the experience to operate it. She had been out to feed the bees before trial and noticed that they needed feeding and that one-third to two-thirds of the bees had died.

Husband testified that it was historically infeasible for him to produce the number of bees wife's expert insisted that he should. He had never approached that production figure. He also testified that he did not want the bee business, since he had been trying to retire since 1976. He had inspected the bee yards the day before trial and found one-third of the bees dead of starvation and some hives damaged. At the conclusion of the trial wife agreed to feed the bees provided she could use a community account to do so.

On May 28, 1980, the trial court issued its notice of intended decision. It indicated that the bee business was to be awarded to husband and that the value thereof was $90,000. No explanation of the method of arriving at his value was given. On June 12, 1980, husband filed a motion for an order for the payment of the costs of arresting a moth infestation in the bee business. He stated that since the time of trial wax moths, which attack and destroy empty hives, had infested the combs. He stated that although there was already substantial damage, prompt action at a cost of less than $1,000 could save much of the comb. Since wife had been and continued to be in control of all of the parties' monetary assets, husband sought an order releasing the funds to correct the situation.

On July 14, 1980, the court granted husband's motion for a partial distribution of community funds over the objection of wife. The court further ordered that: "The petitioner shall have the bees and be responsible for them." On August 7, 1980, husband moved for a new hearing on the value of the bee business in view of the destruction of that business during the time that wife was responsible for it. Wife resisted the motion, blaming husband for neglect of the bees and asserting that in any event the value of the business was not diminished substantially "since the evidence presented at trial showed that most of the value of this business is derived from the skill, reputation, clientiel [sic], and experience of the husband."

On September 15, 1980, husband filed additional points and authorities in support of his motion to reopen the matter of the value of the bee business. In support thereof he attached a hold order and abatement notice from the agricultural commissioner addressed to wife which declared a large number of the community hives to be a public nuisance and ordered abatement. The court denied the motion to present further evidence. Findings of fact and conclusions of law and the above-mentioned interlocutory judgment were entered.

1. *The Value of the Rives Queens.*

Husband argues that the trial court erred in setting the value of the business at $90,000. This value represents a physical asset value of $39,185, and a value of "goodwill" of $50,815. Husband contends that there was no goodwill, and that in any event the court used an improper manner of computing the value of goodwill.

■ The concept of goodwill in a marital dissolution context is elusive. It is most often considered in connection with the value of a professional practice, such as that of a lawyer or doctor. (See *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 462-463 [152 Cal. Rptr. 668].) Essentially, goodwill in a dissolution context is a portion of the value of the practice as a going concern. (*In re Marriage of Slater* (1979) 100 Cal.App.3d 241, 246 [160 Cal.Rptr. 686].) The record establishes that the queen bee business resembles a professional practice in many respects. It depends in part upon husband's skill, experience and reputation in the industry. Husband has a specialized skill and his reputation in the industry is excellent. The decisional authorities have not limited the concept of goodwill to that of a professional practice, and in light of the record we cannot say as a matter of law there can be no goodwill in a queen bee business.

Husband's argument is not that there can be no goodwill in a business such as his; he argues that in this case the evidence does not support the finding that there was goodwill. ■ He also argues that even if there were goodwill, the trial court used an improper manner of determining the value thereof. He points out that wife's expert witness determined the value of the alleged goodwill by using a potential income approach, rejecting historical production and income figures and using instead his estimation of what the business should produce. Husband argues that this approach is improper. We agree for a number of reasons.

■ First, it is established that the expectancy of future earnings is not synonymous with and should not be the basis for determining the value of goodwill in a community property business. (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 108-109 [113 Cal.Rptr. 58], disapproved on another ground in *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 573 P.2d 41]. See also *In re Marriage of Slater, supra,* 100 Cal.App.3d at p. 246; *In re Marriage of Aufmuth, supra,* 89 Cal.App.3d at p. 463, disapproved on another ground in *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815 [166 Cal.Rptr. 853, 614 P.2d 285].) This is so because community property interests may be acquired only during the marriage and it would be inconsistent with that philosophy to assign value to the postmarital efforts of either spouse. (*In re Marriage of Lopez, supra,* 38 Cal.App.3d at p. 109.) ■ The potential income approach used by wife's expert witness was based entirely upon the expectation of future efforts of husband and as such was an improper means of valuing goodwill.

Second, the accountant's valuation of the goodwill was based upon assumptions which are not proven in the record. He testified that he made his calculations upon his estimation that husband should be able to produce 18,840 queen bees per year for sale from his 2,100 production units. No evidence supports that expectation. Husband has never approached that production figure. His annual production was around 11,000 to 12,000 queens. Husband testified that a production figure of 18,840 per year was not feasible for him. Moreover, Denny Millhouse, the owner and operator of Nor Cal Queens and Honey Company, upon whose advice the accountant purported to rely, testified that he produces 30,000 queens for sale per year from 12,000 to 15,000 production units. The accountant thus expected husband to produce more than 60 percent of Millhouse's output with less than 20 percent of his production units. The accountant also computed the selling price for the queen bees at the highest seasonal selling price of $4.50 each despite evidence that this price was obtainable only early in the season and that later in the season the price drops as low as $3.75 per queen. This inflated production rate and gross income drastically distorted the expected net income figure, since the income from the "extra" bees was nearly all profit.

Finally, the potential income approach completely ignores important considerations in determining the existence and value of goodwill. ■ As we said in *In re Marriage of Lopez, supra*: "Certain matters merit consideration which may be said reasonably to contribute to, diminish,

or affect the intangible value of professional goodwill at the time of dissolution and to the continuity and retention of the benefits thereof which the professional practitioner will continue to enjoy after the marital dissolution. In that context some such factors are the practitioner's age, health, past demonstrated earning power, professional reputation in the community as to his judgment, skill, knowledge, his comparative professional success, and the nature and duration of his business as a sole practitioner or as a member of a partnership or professional corporation to which his professional efforts have made a proprietary contribution." (38 Cal.App.3d at pp. 109-110.)

■ Husband is an elderly man well past the age of retirement. He asserted that he has been trying to retire from the queen bee business since 1976, and that testimony is not only uncontroverted, it is supported by the fact that in that year he attempted to sell the business to wife's son. Throughout these proceedings he has insisted that he no longer desires to work in the queen bee business, and he sought to have the court either award the business to wife or to sell it and divide the proceeds. Husband's advanced age and desire to retire are important considerations in assessing goodwill, yet the potential income approach completely ignores these factors. That approach likewise ignores historical production and income figures. The approach ignores the fact that husband's future efforts are not community property and may not be divided by the court. Finally, that approach ignores the fact that husband's skill, experience and reputation cannot be considered community assets and in any event were acquired in the 40 years prior to the relatively short marriage and thus cannot be considered to have been acquired by operation of the business as a community asset. The testimony of wife's expert was thus not a proper basis upon which to determine the value of the goodwill of the queen bee business.

The only other testimony presented by wife concerning the value of the queen bee business was that of Denny Millhouse of Nor Cal Queens and Honey Company. He testified that a hypothetical queen bee business might be worth $100,000 plus. The hypothetical, however, did not fit the facts of this case. The hypothetical business included two acres of land worth $15,000, while no land was included in the Rives business. Further, the hypothetical involved assets in good condition, while the testimony established that there was damage to the Rives assets and many of their bees had died. The record establishes further that Millhouse believed the Rives business included 4,000 production units, while the evidence showed only 2,100. And the hypothetical included an as-

surance that there was a list of return customers and Millhouse's answer included the condition that all of the assets were "great" and that he could be assured of getting the customers. Millhouse conceded that the death of the bee inventory would affect the value of the business "highly" and that the prospective owner's age would also be a factor. Finally, he testified that he had once paid $50,000 for goodwill in buying out a business and that he "got ripped," and would not pay that amount for goodwill again. Millhouse's testimony is thus not the type of evidence upon which a value of over $50,000 could be assigned to the goodwill of the Rives Queens business.

We conclude that none of the wife's evidence of valuation supported a finding of a value of the Rives Queens business of $90,000. This is particularly true in view of the fact that over 55 percent of that valuation was for goodwill. In view of husband's advanced age and uncontroverted desire to retire, a goodwill factor far in excess of the value of the physical assets of the business was unjustified. (See *In re Marriage of Lopez, supra*, 38 Cal.App.3d at pp. 108-109.) The judgment therefore must be reversed.

2. *The Refusal to Reopen After the Announcement of Intended Decision.*

█ Husband contends that the trial court erred in refusing to reopen after the announcement of intended decision because more damage had occurred to the bee business after submission of the case. We must agree. In *In re Marriage of Olson* (1980) 27 Cal.3d 414 [165 Cal.Rptr. 820, 612 P.2d 910], a community property residence had been sold by foreclosure after the announcement of intended decision but before entry of the interlocutory judgment. In the division of property the residence constituted the major portion of the wife's award. The Supreme Court held that it was an abuse of discretion for the trial court to refuse to reopen the division of property to consider the subsequent loss, since the division was thus neither fair in principle nor equal in result. (27 Cal.3d at p. 422.)

The property division in this case, like that in *Olson, supra*, was neither fair in principle nor equal in result. Wife, by her own actions, received control of the community businesses and barred husband therefrom. She then ignored the bee business, and allowed the bees to starve and the hives to be damaged by moth infestation, and failed to run the business thereby destroying the continuity of the business as a going

concern. In the meantime she devoted her efforts to the cage business and built up the assembled cage inventory to a level of 170,000 cages with a value, by her own testimony, of $20,400. Her actions were rewarded when the trial court awarded the depleted bee business to husband with an inflated valuation, and awarded the cage business to wife with the finding that the inventory thereof was her separate property since it had been constructed through her efforts after separation. Such a result may not be condoned.

In view of the inequity of the result of the property division it is no answer to assert, as wife asserts, that husband could have remedied the damage and that the damage was due to the neglect of them both. Wife had control of the parties' community bank accounts and refused to release funds to husband. Moreover, by her own actions she had control of the business and a stipulation barring husband from the operation. Finally, even if it were true that husband could have remedied the damage, that would only be a factor for the trial court to consider when the matter was reopened. Wife's mere assertion that husband could have done so was not a basis for resolution of the matter without a hearing.

Wife's reply to husband's motion to reopoen asserted that even with the admitted destruction of the physical assets it was unlikely that the business was substantially devalued since "most of the value of the business is derived from the skill, reputation, clientiel [sic], and experience of the husband." That, of course, is no answer to the motion since factors such as skill, reputation and experience are not community property and may not be divided in a dissolution (*In re Marriage of Aufmuth, supra*, 89 Cal.App.3d at p. 461), and neither may the future earnings and efforts of husband be considered community property. (*In re Marriage of Lopez, supra*, 38 Cal.App.3d at pp. 108-109.) To the extent wife's assertion in opposition to the motion to reopen is accurate it merely points out the error in the original valuation.

### 3. *The Refusal to Award the Business to Wife or Alternatively Sell It.*

 Civil Code section 4800 requires that the trial court divide the community property equally. This provision has been held to require, as a general rule, that the court make an in-kind division of community property, that is, an award of equal shares in each community asset to each spouse. (See *In re Marriage of Brigden* (1978) 80 Cal.App.3d 380, 390 [145 Cal.Rptr. 716].) An exception to the general rule occurs where economic circumstances warrant an award of an asset to one par-

ty with such conditions as are necessary to effect a substantially equal division of the community property. (Civ. Code, § 4800, subd. (b)(1).) This "economic circumstances" exception to the general rule should be construed so that the exception does not become the rule. (*In re Marriage of Brigden, supra*, 80 Cal.App.3d at p. 391.) Nevertheless, the trial court remains vested with considerable discretion in determining whether circumstances exist such that in-kind division is not appropriate. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 603 [153 Cal. Rptr. 423, 591 P.2d 911].)

■ In the circumstances of this case it cannot be held that the trial court abused its discretion in failing to award a one-half interest in the bee business to each party. In fact, it would have been folly to have done so. Although the parties ran the business together during marriage the record is replete with proof of their inability to do so after separation. On numerous occasions husband has charged that wife "nags," bitches," and otherwise harasses him. Wife has charged husband with, among other things, physical violence. Without any reference to fault it is clear that the antagonistic nature of this marital breakup has rendered the parties incapable of working together to operate the business.

The record likewise supports the court's decision not to award the business to wife. She testified that she could not run the business because she did not have the strength or skill to do so. The evidence was uncontroverted that husband was the one that possessed the skill, experience, and reputation upon which the business was founded. There was thus no abuse of discretion in not awarding the business to wife. Husband contends, however, that since he did not desire the business it should have been sold and the proceeds divided.

Disputes regarding which party to a dissolution should be awarded an asset usually arise when both parties desire the asset. Thus, in *In re Marriage of Brigden, supra*, 80 Cal.App.3d at page 393, both parties desired the community property corporate stock and the Court of Appeal held that it was an abuse of discretion to award all of the stock to the husband. And in *In re Marriage of Connolly, supra*, 23 Cal.3d at pages 602 and 603, the parties agreed that the community property stock should be awarded to the husband, but when the stock rose in value the wife sought a new trial alleging that it was an abuse of discretion not to make an in kind division. The Supreme Court distinguished *Bridgen* and found no abuse of discretion in the circumstances of the *Connolly* case.

This case is inapposite to the usual situation in that here neither party desired the business. ■ It is established that a trial court may, in the exercise of its discretion, order that a community property asset be sold in order to effectuate an equal division of the community property. (*In re Marriage of Davis* (1977) 68 Cal.App.3d 294, 307 [137 Cal.Rptr. 265].) We have discovered only one appellate decision, however, in which it was contended that the trial court was required to do so. In *In re Marriage of Winn* (1979) 98 Cal.App.3d 363 [159 Cal. Rptr. 554], the husband had been in the horse slaughter and horse auction business for many years. In the dissolution proceeding a value of $15,000 was assigned to the business which the husband accepted as binding upon him. He likewise admitted that any sale of the business would have been for "zero." He nevertheless insisted that the trial court should have sold the business and divided the nonexistent price equally. The Court of Appeal rejected the argument and found no abuse of discretion in the refusal to order the business sold.

The circumstances in *Winn* were peculiar. The community property business had a recognized value to the husband of $15,000, yet due to the nature of the business it had no market value. The husband conceded that he intended to stay in the business and there was evidence that he could derive a substantial benefit from the continuity thereof, yet he argued that it should be sold for "zero," thus depriving the wife of any share of the business at no cost to himself. Under such circumstances an award of the business to the husband with an offset (in that case a promissory note) to the wife was the only way the trial court could comply with its duty under Civil Code section 4800 to divide the property equally. Few cases involve such simple facts and so clear a result.

The equality of a division of community property is often intimately tied to the valuation of that property. In many cases an apparently equal division is in reality an inherently unequal division when economic circumstances are considered in light of the situation of the parties. In *In re Marriage of Tammen* (1976) 63 Cal.App.3d 927, at page 931 [134 Cal.Rptr. 161], a trial court awarded the bulk of the community property to the wife and to equalize the division ordered the wife to execute a promissory note in favor of the husband bearing simple interest of seven percent and secured by a second deed of trust on the residence awarded to the wife. The Court of Appeal reversed the judgment, holding that as a matter of law the note was not worth its face value under the circumstances presented and thus the trial court failed to fulfill its duty to divide the property equally. (See also *In re Marriage of Herr-*

*mann* (1978) 84 Cal.App.3d 361, 366 [148 Cal.Rptr. 550]; *In re Marriage of Hopkins* (1977) 74 Cal.App.3d 591, 598 [141 Cal.Rptr. 597].)

■ In the circumstances of this case the award of the queen bee business to the husband coupled with the relatively high value placed upon the business resulted in an unequal and unjust division of the community property. By that award husband received physical assets valued before the proven damage to them at $39,185, and an intangible goodwill valued at $50,815. Even accepting wife's expert's excessive potential production and income figures, it would take husband nearly four years of working in the business to earn back that goodwill without regard to taxes or discounting to present value. It would take substantially longer if historical production figures were considered and longer still if tax rates and present value considerations were applied. At the time of trial husband was nearly 67 years old and had been trying to retire for several years. To force upon him the requirement that he continue to work for many more years in order to realize his share of the community property was unjust and unreasonable, particularly where wife was allowed to receive and enjoy her share immediately. Moreover, since, as wife concedes, the relatively high value placed on the business was dependent upon husband continuing to operate it, by his death or retirement he would forfeit his share of the community property. In view of husband's age and asserted desire to retire, the property division placed upon husband a disproportionate risk of loss.

The suggestion that the business be sold and the proceeds divided lends itself well to this case. Such a division would avoid valuation problems, eliminate the need to place a disproportionate risk of loss on either party, be impervious to charges of favoritism, apportion the risk of future tax liabilities equally, accomplish an immediate division of the property, and provide the parties with the most post-dissolution economic stability. (See *In re Marriage of Brigden, supra*, 80 Cal.App.3d at p. 391, the advantages of an in kind division in that case apply equally to the sale of the assets herein.)

In view of this discussion it is no answer to assert, as wife does, that husband may be required to continue in the business so that her share of the community property may be maximized. A trial court may not order an unequal or inequitable division of property in order to maximize one party's share. Moreover, the authorities we have discussed above make it manifest that wife is not entitled to insist that husband

continue to work for the benefit of the community, or more particularly for her benefit, after the dissolution of the marriage.

We do not hold that on remand the trial court must order the queen bee business to be sold. It was not the award of the business to husband alone which resulted in an unequal division of the property; it was the award of the business coupled with an inordinately high valuation of the "goodwill" of the business which failed to take into consideration proper factors such as the husband's advanced age and desire to retire. On remand consideration of the appropriate factors in evaluating goodwill may result in a valuation of the business which, in light of economic realities, does not make an award of the business to husband inequitable. The trial court must consider the issue in light of all of the circumstances present on remand.

### THE RIVES CAGES

During the marriage the parties operated a queen bee cage business in addition to the queen bee business. Wife was primarily responsible for this business and she has an excellent reputation in the industry for her cages. In the dissolution wife sought and was awarded the cage business with an assigned value of $35,000. In addition the court held that all of the inventory wife had compiled since separation ($20,400) belonged to her as her separate property. Husband contends that the trial court erred in determining the value of the cage business.

Wife's evidence concerning the value of the cage business was introduced through the testimony of the same accountant that valued the queen bee business. He purported to use the same approach, that is, the potential income approach, however he made certain assumptions which he did not make in valuing the bee business. First, he based his computations upon a limited production rather than potential production because he assumed that there would be a limited number of queens to put in cages and therefore there would be a limited demand for the cages. He also did not add in a value for the land occupied by the business because he assumed that wife would live on the land and that it should be considered personal. He calculated potential income from a limited production, and after deducting estimated expenses, return to capital, and a salary for the owner-operator, he concluded that there was no excess potential income and hence no goodwill. He thus concluded that the value of the cage business was the value of the physical

assets, which was $27,400. Husband's accountant based his calculation upon historical income rates and determined that the business was worth $58,510.

■ As wife points out, the value placed upon the cage business was within the range of the evidence. Nevertheless, we conclude that the trial court must reconsider that valuation. This is so because the record establishes that the court failed to consider the proper factors in setting that value and considered instead future, although limited, efforts of wife. While wife is much younger than husband, she nevertheless is approaching retirement age. Moreover, the record established that a major customer of Rives Cages was Rives Queens. The potential loss of such a customer may affect the "going concern" value of the business. These factors, among others we have discussed in connection with our discussion of the valuation of the Rives Queens business, should be considered by the trial court on remand. We do not indicate whether, on remand, the trial court should raise, lower, or retain its valuation of the business. We indicate only that in fairness the value of the cage business should be reconsidered.

## THE REAL PROPERTY

Prior to their 1971 marriage husband acquired six acres of land known as the Oregon Trail property. He added improvements to the land including a trailer home, water lines, septic system, and blacktopping. After marriage husband completed paying for the land and added a "Butler building" to house the cage business. The trial court found that the land was 28 percent separate property of husband and 72 percent community property. That finding is not contested.

In valuing the property the trial court relied upon an appraisal report. The report was prepared on the assumption that the land would be partitioned into three parcels with husband receiving the outer two parcels and wife receiving the inner parcel. The purpose of such a split was so that wife could be awarded the portion of the land upon which the Butler building, cage business and the newer mobile home were located. In its announcement of intended decision the court expressed misgivings about a partition solution, but held that since wife was to be awarded the cage business and it would be detrimental to the business to require that it be moved, the land should be partitioned in accordance with the appraisal report.

After the announcement of intended decision husband moved to re-open the question of the valuation of the land. In support of this motion he asserted that "comments of one former counsel have led another former counsel to believe that Shasta County's Planning Department will not approve a split of the Oregon Trail property." To support this assertion husband attached a copy of a letter from his former counsel to his current counsel which stated: "I received a phone call this morning from [another former counsel] and he made the allusion that the county stymied the lot split." The court denied the motion to reopen.

 Husband argues that the trial court erred in refusing to reopen under the authority of *In re Marriage of Olson, supra,* 27 Cal.3d 414. We reject this contention. The information relied upon by husband was insufficient to establish that the lot split was in fact "stymied," and failed to indicate how the value of the land might be affected thereby. In any event, the trial court retained jurisdiction over the land division to make such future orders as may be necessary to effectuating the division. In the event the lot split is not possible the court may at that time reconsider its award. Finally, we note that due to our decision herein the trial court will have jurisdiction on remand to reconsider its division of the community property and may at that time consider subsequent developments.

### THE CENTRAL VALLEY RESIDENCE

Before the marriage wife owned a residence at 4617 Main Street in Central Valley. That property was stipulated to be the separate property of wife. After marriage the neighboring residence, located at 4625 Main Street, was acquired by a deed which listed the grantee as wife "a married woman as her separate property." Wife testified that she put a bid on the property at an auction and husband testified that he did not want the property but that wife did, so he bought it. He never saw the deed and did not know why it was written as it was. The trial court found the residence to be community property and in her cross-appeal wife contends that the court was in error.

Civil Code section 5110 provides that where a married woman acquired real or personal property by an instrument in writing prior to January 1, 1975, the property is presumed to be her separate property. The property in question was acquired in 1973 and thus from the form of the deed is presumed to be separate property. Wife contends, relying upon *In re Marriage of Lucas, supra,* 27 Cal.3d 808, and *In re Mar-*

*riage of Cademartori* (1981) 119 Cal.App.3d 970 [174 Cal.Rptr. 292], that the presumption may only be rebutted by evidence of an agreement or understanding that the property would be community.

Civil Code section 5110 contains four presumptions relative to community property: first—property acquired during marriage, except by gift, devise or bequest, is presumed to be community property; second —property acquired by a married woman by an instrument in writing prior to January 1, 1975, is presumed to be the separate property of the wife; third—when property is acquired by husband and wife by an instrument in writing in which they are described as husband and wife, unless a different intention is expressed in the instrument, the property is presumed to be community; and fourth—when a single family residence is acquired by husband and wife during marriage as joint tenants, for the purposes of division in dissolution or separation proceedings the property is presumed to be community.

*In re Marriage of Lucas, supra,* 27 Cal.3d 808, involved the fourth presumption, that a family residence acquired in joint tenancy during marriage is presumed to be community property for purposes of dissolution or separation. The Supreme Court held that the act of taking property in a joint and equal ownership form is inconsistent with an intention to preserve a separate property interest, and therefore the presumption of community property may not be overcome simply by tracing the source of the funds used or by the hidden intention of one party; there must be evidence of an agreement or understanding that the property would be the separate property of one spouse despite the form of the title. (27 Cal.3d at p. 815.)

*In re Marriage of Cademartori, supra,* involved the third presumption, that property acquired by an instrument describing the parties as husband and wife is presumed to be community property. The Court of Appeal rejected the contention that the presumption could be overcome merely by tracing the fund used to acquire the property or by the hidden intention of either party; again, evidence of an agreement or understanding is required to show that property so acquired is the separate property of a spouse. (119 Cal.App.3d at p. 975.)

The first presumption, that property acquired during marriage other than by gift, devise or bequest, is community property, was discussed in both *Lucas* and *Cademartori.* Both courts agreed that the general presumption that property acquired during marriage is community

property may be overcome simply by evidence that the property was acquired with separate property funds, i.e., by tracing the source of the acquisition. (*Lucas, supra*, 27 Cal.3d at p. 815; *Cademartori, supra*, 119 Cal.App.3d at p. 973.)

The presumption with which we deal is unlike the other three presumptions in Civil Code section 5110. The first presumption is a general presumption, while the third and fourth presumptions are specific presumptions based in legislative and judicial history as well as in the intent and assumptions of most parties who so acquire property. (See *In re Marriage of Lucas, supra*, 27 Cal.3d at pp. 813-815.) The second presumption, unlike the others, is an anachronism, a hangover from earlier days when the parties' interests in community property were at best nominally equal.

Prior to January 1, 1975, the interests of the parties to a marriage in the community property of the marriage were stated to be present, existing and equal, but were not truly so. (Civ. Code, § 5105.) Examples of the lack of equality are former Civil Code section 5101, which provided: "The husband is the head of the family. He may choose any reasonable place or mode of living, and the wife must conform thereto," and Civil Code section 5105, which provided that the community property of the marriage was "under the management and control of the husband." The lack of true equality was not without its benefits. One benefit for wives was former Civil Code section 5110, which provided that property acquired by a married woman by an instrument in writing was presumed to be her separate property.

In Statutes of 1973, chapter 987, effective January 1, 1975, the Legislature acted to change the former rules of community property which provided that the spouses had equal interests in community property in name only. Civil Code section 5101 was repealed. Section 5105 was amended to simply state that the interests of the spouses are present, existing and equal. Sections 5125 and 5127 were amended to provide that, with certain exceptions applicable to each spouse, either spouse has the management and control of the community property. Further, the presumption of section 5110 that a married woman who acquires an interest in property by an instrument in writing acquires a separate property interest was abolished.

Changes in the right to manage and control community property can be and were made fully retroactive. (See Civ. Code, §§ 5125 and 5127.)

Changes in the presumption with respect to separate ownership, however, could have adverse consequences if retroactively applied. (See Reppy, *Retroactivity of the 1975 California Community Property Reforms* (1975) 48 So.Cal.L.Rev. 977, 991 *ff.*) The Legislature chose to make the abolition of the presumption of separate ownership prospective only, and thus property acquired prior to the effective date of the community property reform continues to be controlled by the former presumption.

The retention in Civil Code section 5110 of the presumption of separate property where a wife acquired property by an instrument in writing prior to January 1, 1975, was intended to preserve the status quo for property acquired prior to that date. We can discern no intent on the part of the Legislature to modify the type of evidence which may rebut that presumption. Accordingly, we hold that the evidence necessary to rebut the presumption is the same type of evidence that was necessary prior to the Legislature's prospective abolition of the presumption.

The type of evidence which has been held sufficient to rebut the presumption relative to separate property of the wife is dependent upon whether the husband acquiesced in the form of title. Where the husband was ignorant of the form of title and did not consent thereto it has been held sufficient to trace the source of the purchase to community funds. (See *Horsman v. Maden* (1941) 48 Cal.App.2d 635, 641 [120 P.2d 92]; *Truelsen v. Nelson* (1941) 42 Cal.App.2d 750, 754 [109 P.2d 996].) Where the husband consents to the form of title an additional presumption arises, that he intended a gift to the wife. (*Estate of Nelson* (1930) 104 Cal.App. 613, 620 [286 P. 439].) Under such circumstances in addition to tracing the source of the acquisition to community property it is necessary to rebut the presumption that the husband made a gift of the property to the wife. (*Ibid.*) The husband's testimony that he did not intend a gift has been held sufficient for this purpose. (*Williamson v. Kinney* (1942) 52 Cal.App.2d 98, 102 [125 P.2d 920].)

The evidence did not establish that husband was aware of the form in which title to the residence was taken or that he consented thereto. He denied ever seeing the deed and did not know why it was made out as it was. Wife's testimony did not refute his testimony. She also did not know why the deed was made out as it was, and was surprised when she saw it. Under such circumstances it was sufficient that the source of the funds be traced to community property and husband's

testimony was sufficient for this purpose. Moreover, to the extent it could have been held necessary to rebut a presumption of a gift, husband's testimony did so. We find the trial court's conclusion to be supported by the evidence.

In any event, even were we to assume that it is necessary to establish an understanding or agreement in order to rebut the presumption arising from the form of the deed, it is not necessary that the understanding be express. Such an understanding may be inferred from the circumstances and actions of the parties. (*Socol* v. *King* (1950) 36 Cal.2d 342, 346 [223 P.2d 627].) The circumstances of the parties in this case well support a finding of such an implied understanding. During the marriage the parties operated as a community. The businesses were run, assets were purchased, and bank accounts were opened and enlarged, without regard for the form of the title, but clearly for the joint benefit of the parties. Wife gained substantially from this manner of operation. Under such circumstances the trial court's finding that the Central Valley residence acquired with community funds was a community asset despite the manner in which title was taken is supported by the evidence.

SPOUSAL SUPPORT

Wife contends that the trial court abused its discretion in failing to reserve jurisdiction to award spousal support. In her response to the petition for dissolution wife indicated that she would seek spousal support but she thereafter dropped any claim therefore. She now argues that under *In re Marriage of Aufmuth, supra*, 89 Cal.App.3d at pages 458 and 459, the marriage, which lasted slightly more than seven years, must be considered "lengthy" for purposes of spousal support. Under the rule of *In re Marriage of Morrison, supra*, 20 Cal.3d 437, at page 453, a trial court should not terminate jurisdiction to award spousal support after a lengthy marriage unless the record clearly indicates that the supported spouse will be able to meet his or her needs at the time of termination.

Wife misunderstands the decision in *Aufmuth*. That case involved a marriage slightly over eight years. The husband was an attorney with a relatively high income, while the wife had not been employed during the marriage and had limited economic prospects. She was awarded custody of the couple's two young children, child support of $500 per month, and spousal support of $1,000 per month. On appeal the husband con-

tended that the reverse of the *Morrison* rule must be applied, that is, that in a short marriage the court must provide for automatic termination of spousal support. The Court of Appeal recognized that the marriage was of relatively short duration, but held that that fact alone did not require automatic termination of the spousal support. The court did not hold, as wife suggests, that a marriage of eight years must be considered "lengthy."

The proper factors to be considered in determining whether an award of spousal support is appropriate are set forth in Civil Code section 4801. These factors include: the earning capacity of each of the parties taking into account impairment thereof due to periods of unemployment during the marriage to permit devotion of time to domestic duties; the needs of each party; the obligations and assets, including separate property of the parties; the duration of the marriage; the ability of supported spouse to engage in employment without interfering with the needs of dependent children of the marriage; the time required for the supported spouse to acquire an education or training for employment; the age and health of the parties; the standard of living of the parties; and any other factors deemed just and equitable.

■ In view of these factors there is little to justify an award of spousal support in this case. The marriage was of short duration and there were no children of the marriage. The parties had each been previously married and were older when they married. Both parties had worked prior to marriage, and neither foresook employment due to the marriage. Wife had been employed in the cage business prior to the marriage and continued that business during the marriage and her reputation in the industry is of the highest order. The community property of the parties was considerable, and wife's separate property, together with her share of the community property, provided her with extensive liquid assets, real property, investment property, and an ongoing business to which she was particularly adapted in earning a living. In view of these considerations the trial court did not abuse its discretion in failing to retain jurisdiction to make an award of spousal support.

## DISPOSITION

The interlocutory judgment of dissolution of marriage is reversed and the cause is remanded to the trial court with directions to reconsider the

valuation of the Rives Queens and Rives Cages businesses and to reconsider the division of the community property in accordance with the valuation of the businesses on remand and in light of our discussion. In all other respects the judgment is affirmed. The parties are to bear their own costs on appeal.

Blease, Acting P. J., and Sparks, J., concurred.

The petition of appellant wife for a hearing by the Supreme Court was denied April 21, 1982. Reynoso, J., did not participate therein.