246 B.R. 500 (2000)
In re Charles L. and Lisa N. THOMAS, Debtors.
Charles L. and Lisa N. Thomas, Appellants,
v.
United States of America, Appellee.
No. CIV. A. 99-2200, Bankruptcy No. 98-14907.
United States District Court, E.D. Pennsylvania.
March 23, 2000.
*501 *502 John R. Crayton, Bensalem, PA, Ina S. Weiner, Philadelphia, PA, Julia Carlone, IRS Spec. Proc. Branch, for appellants.
Daniel K. Astin, Philadelphia, PA, Frederick K. Reigle, Reading, PA, for appellee.

MEMORANDUM & ORDER
ANITA B. BRODY, District Judge.
I. INTRODUCTION
This is an appeal from an order of the United States Bankruptcy Court, In re Thomas, 231 B.R. 581 (Bankr.E.D.Pa. 1999). Appellant-debtors Charles and Lisa Thomas appeal the ruling of the bankruptcy court that allowed an amended proof of claim of the Internal Revenue Service ("IRS"). For the following reasons, I will affirm the bankruptcy court's ruling.
II. FACTS
Debtor Charles Thomas has operated a delivery service, All American Couriers ("All American"), since 1990. All American specializes in rush, same day deliveries. Thomas is the sole employee of All American and manages all of its operations and sales. Although Thomas occasionally delivers packages himself, most of the deliveries are made by drivers who operate as independent contractors and receive a commission per delivery. Because All American uses independent contractors to make the actual deliveries, Thomas acts as the middle-man between the customers and the drivers. When customers contact All American, Thomas answers the phone and arranges the pick-up and delivery details. In addition to handling customer relations, Thomas personally selects drivers to ensure their reliability. In 1995, Thomas incorporated All American under Subchapter S so that the company could obtain cargo insurance. Thomas is the sole owner of All American's stock.
Since 1990, All American has grown rapidly. For example, the gross revenues increased from approximately $100,000 in 1992 to more than $250,000 in 1997. Thomas's net income has also grown dramatically, from $9,000 in 1992 to more than $68,000 in 1997.
Despite the robust growth of All American, Thomas and his wife Lisa filed for relief under Chapter 13 of the Bankruptcy Code on April 17, 1998. On August 20, 1998, the IRS filed an amended proof of claim, which included a secured claim of $55,521.90. The collateral for the IRS's secured claim is Thomas's stock in All American. On September 2, 1998, the debtors filed an objection to the IRS's claim. In their objection, the Thomases contended that the value of All American stock was only $3,000, and therefore, the secured part of the claim had to be reduced to $3,000.
On December 14, 1998, Judge Stephen Raslavich of the United States Bankruptcy Court for the Eastern District of Pennsylvania held a hearing on the objection. At the hearing, Thomas testified about the background and growth of the company. *503 He spoke about the loyalty that All American's customers and drivers had towards him. Thomas also indicated that he intended to continue operating All American. After Thomas's testimony, Thomas called William Barbera, a Certified Public Accountant and Thomas's appraiser, to testify as an expert. In his appraisal of All American, Barbera determined that All American's revenues resulted exclusively from Thomas's efforts. Because he determined that All American's income flowed from Thomas's efforts, Barbera concluded that All American had no independent value as a going concern. Barbera further determined that, because All American had no independent value as a going concern, the proper measure of All American's value was its liquidation value, which he calculated at $10,000.
In response to Barbera's testimony, the IRS called Paul Elkins, also a Certified Public Accountant, to present his expert opinion as to the value of All American. Elkins had previously evaluated All American and determined that the income method was the most appropriate method to measure the value of All American. Elkins specifically rejected the liquidation method of valuation because All American was continuing operations and a liquidation valuation would not account for the business's goodwill or value as a going concern. Using the income based analysis, Elkins calculated the price that an investor would be willing to pay to purchase All American's stock based on its projected rate of return. According to the bankruptcy court,
Elkins' analysis proceeded by extrapolating the business' revenues over the next five years . . ., discounting that amount for present value plus risk factors, and then discounting the amount again for the lack of marketability of the stock.
Thomas, 231 B.R. at 584. The total value of All American, under Elkins's income-based analysis, was $56,000.
The Thomases challenged the validity of Elkins's appraisal, claiming that present value of All American should not include future earnings and again contending that the proper valuation of All American stock should be the liquidation value of the company's assets. The bankruptcy judge rejected the debtors' arguments and permitted the IRS's proof of claim as filed. In ruling for the IRS, the bankruptcy judge relied on Elkins's testimony and appraisal of All American. See id. at 588-89. The Thomases appealed the bankruptcy court's ruling on two grounds: (1) that Thomas is entitled to retain the future income from All American in order to fund his bankruptcy plan under Chapter 13; and (2) that the bankruptcy judge erroneously interpreted Pennsylvania law regarding the value of goodwill.
III. STANDARD OF REVIEW
This court has appellate jurisdiction over final orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). The legal conclusions of the bankruptcy court are subject to de novo review. See In re Ben Franklin Hotel Assocs., 186 F.3d 301 (3d Cir.1999). The bankruptcy court's findings of fact are reviewed for clear error. See id.; see also, Fed. R.Bankr.P. 8013.
IV. DISCUSSION
Chapter 13 addresses the "Adjustment of Debts of an Individual with Regular Income" and establishes a mechanism by which financially over-extended individual debtors can voluntarily create payment plans to pay off their debts. See 11 U.S.C. §§ 1301-1330. A debtor's Chapter 13 plan typically provides that the debtor will pay creditors from disposable income earned after the filing of the bankruptcy petition, rather than funds received from the liquidation of the debtor's pre-petition assets. See 11 U.S.C. § 1322(a)(1); see also, 8 Collier on Bankruptcy ¶ 1300.01 (Lawrence P. King, ed., 15th ed.)("Collier"). "Disposable income" *504 under Chapter 13 is the amount of the debtor's income that exceeds the debtor's reasonable and necessary household and business expenses. See 11 U.S.C. § 1325(b)(2)(A)-(B). As a practical matter, the debtor pays his disposable income to the Chapter 13 trustee, who then transfers the payments to creditors based on the debtor's Chapter 13 plan.
Under Chapter 13, all of the debtor's property, including assets acquired after filing for bankruptcy protection, are included in the bankruptcy estate. See 11 U.S.C. § 1306(a). Therefore, income earned by debtor after the filing of the petition is included in the bankruptcy estate. See 11 U.S.C. § 1306(a)(2). Although the post-petition income is considered estate property, a tax lien on pre-petition assets does not attach to the post-petition income itself. See, e.g., United States v. Sanabria, 424 F.2d 1121, 1123 (7th Cir.1970).
Chapter 13 provides that debtors can repay both secured and unsecured claims. See Collier ¶ 1300.01. A claim is secured if the creditor has a lien on the debtor's property to ensure payment to the creditor. See 11 U.S.C. § 101. Under 11 U.S.C. § 506(a), a creditor's claim is secured only to the extent of the value of the collateral. See 11 U.S.C. § 506(a) (stating "[a claim is secured] to the extent of the value of such creditor's interest in the estate's interest in such property"). To determine the value of the collateralized property, § 506(a) provides that: "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property." Id. According to the United States Supreme Court, "`the proposed disposition or use' of the collateral is of paramount importance to the valuation question." Associates Commercial Corp. v. Rash, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d.148 (1997).
In this case, the debtors' appeal arises from the bankruptcy judge's valuation of the collateral of the IRS's secured claim, Thomas's stock in All American. The debtors contend that the bankruptcy judge should not have used the income-based method to appraise the value of All American and that the liquidation value of All American's assets arrives at a more appropriate measure of the company's worth.
As noted above, § 506(a) provides that collateral shall be valued according to the "proposed disposition or use of such property." 11 U.S.C. § 506(a). In interpreting § 506(a), the Supreme Court in Rash established that "`the proposed disposition or use' of the collateral is of paramount importance to the valuation question." Rash, 117 S.Ct. at 1885. Thomas's testimony at the hearing reflected that he intended to continue the operations of All American. See Tr. at 23. There was no indication that Thomas intended to liquidate the assets of All American. Because Thomas intends to continue operating All American, both Section 506(a) and the Supreme Court's opinion in Rash mandate that All American be valued as a going concern.
The present value of All American as a going concern includes the value of anticipated future income. See, e.g., Prince, 85 F.3d at 319. As the Seventh Circuit observed in Prince:
In general, stock as an asset has value because of its capacity to generate cash flows in the future. . . . In financial terms, the value of the stock on any given day (its "present value") is how much an investor would be willing to pay on that given day in order to obtain the right to receive the stock's cash flows in the future. Theoretically, the stock's present value would be derived first by plotting out the stock's expected future cash flows. . . . This projected stream of income would then be "discounted" back to the present day.
Id. Because the future income is a necessary component of the going concern value *505 of a business, it was proper for the bankruptcy court to include All American's anticipated future earnings in determining the present value of the going concern value of All American.
The debtors contend that the going concern value is not the proper valuation of All American and that the liquidation value of the company's assets is the more appropriate method of appraisal. Liquidation value is an appropriate measure of a company's value when the company is dissolving. See Shanno v. Magee Industrial Enterprises, Inc., 856 F.2d 562 (3rd Cir.1988); see also, Prince, 85 F.3d at 320 (stating "In most cases, liquidation value is only an appropriate estimation of stock worth where a company is dissolving."). Liquidation value is not a proper measure of a company, however, when the business will continue its operations. See, e.g., Prince, 85 F.3d at 319. As the Prince court observed:
where a business is expected to continue as a going concern, the company's expected future earnings from operations often far exceed the liquidation value of the company's physical assets. Thus, when valuing a business that is continuing to operate as a going concern, liquidation value is generally an inaccurate approximation of what shares are worth to shareholders.
Id. In this case, there is no indication from Thomas's testimony that All American will be dissolved, and therefore, the bankruptcy judge properly concluded that the liquidation value of All American is not the proper measure of the value of the company's stock.
Thomas also contends that the bankruptcy judge improperly included future earnings in the present valuation of All American, because valuing All American "based on a discount of future net income is improper when that same future income is needed by Mr. and Mrs. Thomas to fund their Chapter 13 plan." Reply Br. of Appellant at 3. The Thomases assert that such a valuation will impermissibly force them to pay the same IRS claim twice: "Once, when the IRS is granted a secured claim based on future income, and twice, when that same future income is turned over to the Chapter 13 trustee." Br. of Appellant at 9.
As noted above, Thomas's post-petition income is not subject to the IRS's lien on the All American stock. The inclusion of anticipated future income in the present valuation of the company's stock, however, does not subject Thomas's actual future earnings to the IRS lien. The present value of the anticipated future income is used solely to estimate the present value of All American stock. The present value of All American stock is then used to measure the amount of the IRS secured lien. Once the amount of the IRS lien is determined, Thomas's future disposable income will be paid towards the IRS claim according to the Chapter 13 plan. Although the present value of anticipated future earnings influence the amount of the IRS's secured claim, the claim is only paid once. At no point does the IRS lien extend to Thomas's actual future earnings. Therefore, including the anticipated earnings to determine the value of All American stock, and the value of the IRS claim, does not force Thomas to pay off the same claim twice.
The debtors also argue that, even if the income based method is an appropriate appraisal of the value of All American, the bankruptcy judge erroneously applied Pennsylvania law to determine the value of goodwill.[1] Under Pennsylvania law, goodwill is intangible property that is defined as the positive reputation a business may enjoy in the eyes of the public that creates a probability that old customers will continue their patronage. See Butler, 541 Pa. at 378, 663 A.2d 148. As the bankruptcy judge *506 correctly observed, Pennsylvania law divides goodwill into two categories: (1) "professional goodwill," and (2) "economic goodwill." Professional goodwill is "intrinsically tied to the attributes and/or skills of certain individuals." Solomon v. Solomon, 531 Pa. 113, 124-26, 611 A.2d 686 (1992); see also, Gaydos v. Gaydos, 693 A.2d 1368, 1372 (Pa.Super.1997). This type of goodwill arises from an individual professional's reputation, specialized skills and judgment. See, e.g., In re Paolino, 1991 WL 284107 (Bankr. E.D.Pa.); Dugan v. Dugan, 92 N.J. 423, 457 A.2d 1, 6 (1983). Because professional goodwill is inextricably intertwined with an individual's skill and attributes, professional goodwill cannot be valued and cannot survive if that individual is disassociated from the business. See id. By contrast, economic goodwill is wholly attributable to the business itself and can be alienated from the individuals in the business. See id. As a result, economic goodwill can be valued.
The distinction between economic and professional goodwill is pertinent in the context of divorce proceedings, in which professional spouses claim that the goodwill value of their practices result from professional goodwill, and therefore, are not subject to equitable distribution with their ex-spouses. See, e.g., Buckl v. Buckl, 373 Pa.Super. 521, 542 A.2d 65 (1988); Gaydos, 693 A.2d at 1370; Beasley v. Beasley, 359 Pa.Super. 20, 518 A.2d 545 (1986). Typically, the spouse who is a professional is a member of a professional practice, such as a physician, architect, attorney, or accountant. See, e.g., Gaydos, 693 A.2d at 1370 (dentist); Buckl, 373 Pa.Super. 521, 542 A.2d 65 (architect); Beasley, 359 Pa.Super. 20, 518 A.2d 545 (attorney); Butler, 541 Pa. at 364, 663 A.2d 148 (accountant). Although goodwill cases usually involve professional practices, some other services have been considered sufficiently individualized and specialized to derive professional goodwill from a single individual. See, e.g., In re Rives, 130 Cal.App.3d 138, 149, 181 Cal. Rptr. 572 (Ct.App. 3rd Dist.1982) (spouse maintained a queen bee business); In re Hargrave, 163 Cal.App.3d 346, 352, 209 Cal.Rptr. 764 (Ct.App. 3rd Dist.1985) (spouse was a manufacturer's representative).
Applying the principles of goodwill under Pennsylvania law, the bankruptcy judge determined that the goodwill of All American was not professional goodwill that was attributable to Thomas, but economic goodwill that could be alienated from Thomas:
The goodwill at issue in the present case is not of the same type enjoyed by a professional person that is likely to be deemed inalienable. Prospective patients or clients are influence to seek out a certain doctor, lawyer, accountant, architect, or similar professional, as a result of the person's reputation for possessing specific and highly individualized skills based on the professional's training and experience, that allows him or her to offer a unique service. Such skills include the ability to perform a certain life saving operation, win difficult trials, save money on taxes or design buildings that are characterized by a particular aesthetic quality. The goodwill claimed by Charles Thomas is not of that nature. Thomas testified that customers give him repeat business because they trust his ability to reliably arrange for the pick up and delivery of their parcels in a timely fashion. The ability to perform this service does not involve the type of specialized skill or judgment that is so individualized it is incapable of being transferred to another. With Thomas' involvement, the Court finds that a purchaser could take over All American and retain its reputation for reliable service.
Id. at 588. Because the goodwill of All American was associated with the business and was not personal to Thomas, the bankruptcy judge then concluded that the IRS *507 valuation properly included goodwill in the present value of All American stock.
Thomas contends that the bankruptcy court was incorrect in its ruling that professional goodwill only inheres in strictly professional practices. The essence of Thomas's argument is that professional goodwill can be attributed to individuals in non-professional businesses:
[Professional goodwill] applies to the reputation of Charles Thomas in the eyes of his customers just as it would a car mechanic, plumber, or painter who performed personal services without assistance from other employees and under a corporation or trade name.
Br. of Appellant at 4-5. Thomas further contends that the goodwill associated with All American is inextricably tied to his attributes, and therefore, is professional goodwill that should not be included in the value of All American.
A review of applicable caselaw indicates that professional goodwill is not limited to specific professions. See, e.g., Rives, 130 Cal.App.3d at 149, 181 Cal.Rptr. 572. In Rives, for example, the court determined in a divorce proceeding that the husband's queen bee business had professional goodwill that was solely attributable to the husband's talents:
The record establishes that the queen bee business resembles a professional practice in many respects. It depends in part upon husband's skill, experience and reputation in the industry. Husband has a specialized skill and his reputation in the industry is excellent.
Id. at 149, 181 Cal.Rptr. 572; see also, Hargrave, 163 Cal.App.3d at 352, 209 Cal. Rptr. 764 (stating "[t]he type of service offered by husband through Charles Hargrave Associates is closely akin to the type of services offered by accountants, lawyers, physicians, and other professionals."). Therefore, non-professional services can be considered sufficiently specialized that goodwill can be attributed to the individual.
Furthermore, the mere fact that a party is a professional is not necessarily sufficient to attribute the business's goodwill to that individual. See, e.g., Paolino, 1991 WL 284107 at *5. For example, the court in Paolino rejected a doctor's claim that the goodwill of his medical practice should be attributed to him personally, stating:
There is no evidence presented to suggest that [Dr. Paolino]'s skills and reputation as a medical practitioner were such that would generate referrals from other physicians, either locally or from a larger area. Dr. Paolino presented no basis upon which I could conclude that he has created a medical practice that exists in any measure due to his personal goodwill.
Id. Because all professionals do not necessarily engender professional goodwill and non-professionals can create professional goodwill, the key issue in determining the existence of professional goodwill is not whether the particular individual is a professional; instead, the proper focus is in determining the existence of professional goodwill is whether the individual has established a reputation for specialized skill, experience and judgment. As the bankruptcy court correctly noted, professional goodwill results from "the person's reputation for possessing specific and highly individualized skills based on the professional's training and experience, that allows him or her to offer a unique service." Thomas, 231 B.R. at 588.
In this case, Thomas presented no evidence that his activities in the courier service involved specialized skill or judgment. By contrast, the IRS expert testified that the operations of All American were not dependent on Mr. Thomas personally. See Tr. at 56. Moreover, the IRS expert distinguished the operation of All American from more traditional professions:
[I]n a personal services corporation such as a doctor or a lawyer or a dentist, there's the expectation of the person requesting the service to deal with a *508 specific individual. And, they usually only do it for a task or a particular function at a point in time.
In the case of Mr. Thomas's business, even though Mr. Thomas believes that people are dealing with him as opposed to All American Courier, the fact is the service is being performed by somebody other than Mr. Thomas, the actual delivery on time and at the right point in time.
Id. at 49-50. The bankruptcy judge agreed with Elkins's testimony, stating: "The ability to [manage All American] does not involve the type of specialized skill or judgment that is so individualized it is not capable of being transferred to another." See Thomas, 231 B.R. at 588. Therefore, the evidence on the record demonstrates that Thomas's activities in the operation of All American did not involve the specific and highly individualized skills based on Thomas's training and experience that are associated with professional goodwill. Because All American's goodwill is not the result of Thomas's specialized attributes, it is not inextricably tied to Thomas individually and it could survive if Thomas was disassociated from All American. Therefore, the goodwill of All American is not professional goodwill that is attributable to Thomas, but economic goodwill that should be included in the valuation of All American.
V. CONCLUSION
I have determined that the calculation of the present value of the stock of All American Couriers, Inc. properly includes the company's future earnings and that the bankruptcy judge properly held that the goodwill associated with All American is attributable to the company. Therefore, I affirm the ruling of the bankruptcy court.
NOTES
[1] The parties agree that state law governs the determination of property rights in bankruptcy proceedings and that Pennsylvania is the applicable state law.