[L.A. No. 31231. July 3, 1980.]

In re the Marriage of LOLA FAYE and ALLEN JAMES OLSON.
LOLA FAYE OLSON, Appellant, v.
ALLEN JAMES OLSON, Respondent.

COUNSEL

David B. Walker and Walker & Gann for Appellant.

J. Warren Beall for Respondent.

OPINION

**RICHARDSON, J.**—We consider the duties of a trial court in a dissolution proceeding when property is lost to the community during the period between the announcement of an intended decision and the entry of an interlocutory decree.

Husband Allen James Olson and wife Lola Faye Olson were married in 1969. The parties accumulated substantial community assets during their marriage, including a family residence and interests in several business enterprises. They also incurred sizable community obligations in the form of corporate debts and business related expenses. These obligations included notes secured by first, second, and third deeds of trust on the family residence.

On June 16, 1976, wife filed a petition for dissolution of marriage in the San Diego County Superior Court. On August 23, 1976, following an order to show cause hearing, wife was awarded the interim exclusive occupancy and use of the family residence, including the household furniture, furnishings, and appliances therein. She was ordered to make the payments on the note secured by the first trust deed on the home and husband was ordered to make the payments on the note secured by the second trust deed. Both parties were restrained from disposing of any community property except in the ordinary course of business.

The parties effected a temporary reconciliation but thereafter separated permanently. In November 1977 wife, seeking modification of the temporary order and a determination that husband was in contempt of court for noncompliance with the order, in written declarations informed the court as follows: At the time it made its August 23, 1976, order the parties had been indebted to the North County Bank in the sum of approximately $70,000 as evidenced by the promissory note secured by the second deed of trust on the family residence; the note had

matured on February 9, 1977, and was then in default; the bank had demanded full payment and counsel for the bank had advised wife's attorney that foreclosure proceedings would commence promptly; wife was financially unable to pay the bank's demand and the community was in imminent danger of losing the home unless the obligation was paid prior to its then pending forced sale. Further alleging that husband had failed to comply with the court's earlier order that he make payments on the North County Bank note, wife requested that the court order a sale of some of the community assets in order to meet the obligations then owing on the family residence. An order to show cause in re contempt thereupon issued.

On January 17, 1978, husband filed a counterdeclaration in opposition to the requested sale of certain of the community real property. He averred that the property which wife proposed be sold to discharge North County Bank's debt was the only substantial income property held by husband and that he had obtained refinancing of several of the community obligations, thus generating funds which would be available within 60 days to prevent the threatened foreclosure of the residence. He further alleged that the requisite notice of default on the North County Bank's indebtedness had not been recorded.

In her responsive declaration filed on January 20, 1978, wife stated that she had recently learned for the first time of the existence of a third note in the principal sum of $26,000, secured by an unrecorded deed of trust on the family residence, and that on January 19 the beneficiary of the latter deed of trust had demanded the prompt commencement of foreclosure proceedings on this junior encumbrance.

In a subsequent declaration dated January 25, 1978, wife averred that $70,000 was due on the second deed of trust and $26,000 was payable on the third encumbrance.

A five-day trial, limited to the issue of an appropriate division of community property, was held on May 8-9 and May 15-17, 1978, in the Superior Court of the County of San Diego. The parties introduced considerable evidence, both oral and documentary, as to the extent and nature of the community assets and debts, and the matter was submitted to the trial court for its decision.

The trial court promptly issued its "Decision on Submitted Matter" on May 23, 1978, providing, inter alia:

"The parties are entitled to have their marriage dissolved. . . .

"The net equity value of the parties' marital residence at 2410 Royal Crest Drive is found to be $47,000. This property is awarded to petitioner who shall hold respondent harmless as to all encumbrances thereon. . . .

"The net award of community property awarded to petitioner herein is the sum of $43,635; the net award to respondent is $42,304. The amount necessary to accomplish an equal division is $665; petitioner is ordered to pay said sum to respondent. . . .

"Counsel for respondent shall prepare, serve and file such Findings of Fact, Conclusions of Law, and Judgment as are consistent with this decision on submitted matter."

On June 14, 1978, wife moved to reopen proceedings for the purpose of establishing that (a) on June 8, 1978, the family residence, which had tentatively been awarded to her by the court, had been sold at a nonjudicial foreclosure sale by the trustee under the North County Bank deed of trust, and that after receipt of a three-day notice to quit wife had vacated the residence, and (b) neither of the parties would receive any proceeds from the sale. Wife urged that an appropriate finding to the effect that the residence no longer constituted a community asset was both necessary and relevant to any order which purported to direct an equal division of the community property. She further argued that her failure to introduce this evidence previously was excusable because the trial of the cause had preceded the trustee's sale.

A hearing on wife's motion to reopen was held on September 20, 1978, at which husband contended that wife had deliberately permitted the foreclosure to proceed while at all times she had had both the means and the opportunity to save the property. He charged that her deliberate inaction had deprived the community of more than $70,000 in value. Wife countered by asserting that she lacked sufficient income to pay the mortgage payments, and the taxes, insurance, and other expenses that refinancing would have entailed, and that this was the reason that she had not tried to refinance the property.

At the hearing, the following colloquy concluded the taking of testimony:

"THE COURT: The issue before the judge is: Whether, after not sitting on the matter and letting this happen to the properties, it is the duty of the court to then reopen, which is to grant a new trial, because after the decision was announced factors changed? That's the issue that I think I have to face.

"MR. GANN [counsel for wife]: Reopen for a limited purpose, Your Honor, showing the sale of property.

"THE COURT: Sure. Mr. Renshaw doesn't say it didn't happen. I accept the fact that it happened. Who is going to carry the burden of what happened, the judge or the parties? That's the decision this judge has to make.

"          .          .          .          .          .          .          .          .          .          .          .          .          .

"The judge found that there was an equity value in the house, that's always a big decision whether that day or three years or three days or three weeks thereafter it's any good. None of us can tell at the instant of decision that it's, quote, correct, unquote. Decisions are made based upon factors available to the parties at the time they must be made. This is not only a fact of life, it is a fact of legal life, it's a fact of the courtroom.

"I cannot bring myself to conclude that this court ought to—other than recognize the existence of the fact of what has occurred after the announced decision, and believes that the motion to reopen, to redivide, as a result of the factors that occurred thereafter ought to be denied. That's one that I'll probably fall on, but it's a decision that's made by the judge having in mind after having read the factors, the points and authorities, the arguments, the declarations that are on file.

"In that regard the court must announce, however, and clearly state as I did at the outset, that the evidence in this case presented by both parties squarely puts upon the shoulders of the trier of fact, the judge, to make a division with knowledge, the evidence was clear, that both the office building and the residence were in danger of default. As I said at the outset that was a vital factor to this court. Although having

the matter under submission and having the absolute legal right to wait 90 days or 89 days to announce a decision, to act in the manner in which it did act, and communicate to the parties that the first opportunity available to the judge they would have an intended decision.

"The motion as to what happened, did happen, with respect to one of the assets is a matter that I do not believe was inappropriately or any way improperly presented to the court. It just puts to the court: Okay, Judge, here is what our situation is, this is what happened, what are you going to do about it? The judge is going to say: Let the chips fall where they did, motion is denied."

The interlocutory judgment of dissolution of marriage was signed and filed the next day, September 21, 1978. The findings of fact and conclusions of law filed with the interlocutory decree were generally in accord with the "Decision on Submitted Matter" issued on May 23, 1978, the findings of fact stating, in part, as follows:

"11. That the community property of the parties consists of the following assets, with the following net equity values ascribed to each such asset.

"(a) The family residence located at 2410 Royal Crest Drive, Escondido, California. Said property is encumbered with three trust deeds in favor of San Diego Federal Savings and Loan Association, North County Bank, and Mr. and Mrs. Waterman. The net equity of said property is $47,000.00 . . . ."

The conclusions of law recited:

"From the above facts, the court concludes . . . .

"3. That the property subject to disposition by the court in this proceeding should be awarded as follows:

"(a) To petitioner: Cash in the sum of $3,800.00; furniture and furnishings in the sum of $750.00; the residence at 2410 Royal Crest Drive, Escondido, California in the sum of $47,000.00."

Wife appeals from that portion of the interlocutory judgment of dissolution of marriage which divided the community property.

The controlling statutory language appears in section 4800 of the Civil Code which, in relevant part, provides:

"(a) Except upon the written agreement of the parties, or on oral stipulation of the parties in open court, the court shall, either *in its interlocutory judgment of dissolution of the marriage*, in its judgment decreeing the legal separation of the parties, *or at a later time if it expressly reserves jurisdiction* to make such a property division, divide the community property and the quasi-community property of the parties...*equally*. For purposes of making such division, the *court shall value the assets and liabilities as near as practicable to the time of trial,...*

"(b) Notwithstanding subdivision (a), the court may divide the community property and quasi-community property of the parties as follows: [¶] (1) Where economic circumstances warrant, the court may award any asset to one party on such conditions as it deems proper to effect a substantially equal division of the property. [¶] (2) As an additional award or offset against existing property, the court may award, from a party's share, any sum it determines to have been deliberately misappropriated by such party to the exclusion of the community property or quasi-community property interest of the other party." (Italics added.)

■ In dividing the community property equally under the mandate of Civil Code section 4800, subdivision (a), a "court must distribute both the assets and the obligations of the community so that the residual assets awarded to each party after the deduction of the obligations are equal." (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 748 [131 Cal.Rptr. 873, 552 P.2d 1169]; see *Wong* v. *Superior Court* (1966) 246 Cal.App.2d 541, 547 [54 Cal.Rptr. 782].) None of the circumstances described in subdivision (b) as authorizing an unequal division of property is applicable in the case before us.

We note, further, that the trial court's "Decision on Submitted Matter" constituted an announcement of its intended decision. ■ It was not a judgment. It did not thereafter restrict the court's reconsideration of its proposed division of the community property prior to entry of its interlocutory decree. Referring to a notice of intended decision, a respected commentator has observed: "This announcement is *preliminary and tentative*: it 'shall not constitute a judgment and shall not be bind-

ing on the court,' which may modify or change it." (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 312, subd. (a), p. 3119, italics in original; Cal. Rules of Court, rule 232(a).)

■ The decision to reopen a case for the introduction of further evidence lies largely within a trial court's discretion. (*Stoumen* v. *Munro* (1963) 219 Cal.App.2d 302, 319 [33 Cal.Rptr. 305]; *Lyons* v. *Lyons* (1961) 190 Cal.App.2d 788, 791 [12 Cal.Rptr. 349]; *Kaplan* v. *Hacker* (1952) 113 Cal.App.2d 571, 573 [248 P.2d 464]; *Mazzenga* v. *Rosso* (1948) 87 Cal.App.2d 790, 794 [197 P.2d 770].)

■ In the present case, once the trial court had been informed, prior to issuance of its interlocutory decree, that there had been a substantial change in the nature of the community property occasioned by the forced sale of the family residence, the court was obliged, in conformity with section 4800 of the Civil Code, either to redistribute equally the residue of the property then remaining in the community, or, alternatively, find applicable one of the statutory exceptions which permitted an unequal distribution. Here, the court failed to do either, acknowledging that while it could reopen the hearing it would not do so. Under these circumstances we conclude that it was an abuse of discretion to decline to reopen the trial for purposes of making a more current and accurate determination of the community assets and debts.

It should be noted that section 4800, subdivision (a), requires only that "the court shall value the assets and liabilities *as near as practicable to the time of trial.*" (Italics added.) Rather than attempting to impose a rigid formula on the courts, the Legislature has recognized that there may be situations in which both the nature and value of community property cannot be fixed or ascertained at the precise time of trial. Under these circumstances trial courts are thus permitted a reasonable degree of flexibility in accomplishing substantial justice.

In the instant case, a foreclosure and forfeiture of a substantial community asset occurred after trial but before entry of the interlocutory decree. The trial proceedings should have been reopened for the purpose of recalculating the community property valuations and indebtedness under the mandate of Civil Code section 4800. An assignment to wife in September of 1978 of a family residence which had been lost to the community in June of 1978 produced a consequence which was neither fair in principle, nor equal in result.

The judgment is reversed insofar as it purports to dispose of the community property of the parties, and the cause is remanded to the trial court for further proceedings consistent with our opinion.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Manuel, J., and Newman, J., concurred.

Respondent's petition for a rehearing was denied August 13, 1980.