Opinion
 

 KING, J.
 

 Sara Joyce Johnson appeals from an interlocutory judgment of dissolution as to property interests, spousal support, and disposition of property acquired while the parties were living together prior to their marriage. Her husband, Richard L. Johnson, cross-appeals contending the trial court erred in not awarding his fishing boat to him as his separate property. For the reasons
 
 *60
 
 hereafter set forth, the interlocutory judgment of dissolution is affirmed as to termination of marital status, disposition of household furniture, furnishings and appliances, the 1973 Toyota automobile, the 1975 GMC Blazer, the Luv pickup truck, and the Falcon trailer, as well as the order for attorneys’ fees and costs and the spousal support payable by Richard to Sara (excluding substantive stepdown provisions of the spousal support order). In all other respects it is reversed. The trial court is deemed to have denied Sara’s motions for upward modification of temporary spousal support and that order is reversed.
 

 Sara and Richard began living together in November 1967, but were not married until September 25, 1970. On November 24, 1976, Sara filed a petition for dissolution of the marriage. The court rendered its interlocutory judgment of dissolution on October 4, 1979. Additional facts will be stated as each issue is discussed.
 

 Sara’s first contention on appeal is that the trial court erred in finding that Richard had a separate property interest in the family residence the parties purchased after the date of marriage and which they held as joint tenants. This determination was based upon Richard’s proof of his separate property funds being used for half of the down payment. Sara raises a similar objection with regard to the fishing boat, the
 
 Cindy J.
 
 Richard held the boat in his name alone but transferred title to both parties as joint tenants during the marriage. Richard’s cross-appeal is based on the contention that the trial court erred in not finding that the
 
 Cindy J.
 
 was entirely his separate property.
 

 While this appeal was pending, the law applicable to these contentions was clarified by the California Supreme Court in
 
 In re Marriage of Lucas
 
 (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285] and its progeny
 
 In re Marriage of Miller
 
 (1982) 133 Cal.App.3d 988 [184 Cal.Rptr. 408];
 
 In re Marriage of Priddis
 
 (1982) 132 Cal.App.3d 349 [183 Cal.Rptr. 37];
 
 In re Marriage of Hayden
 
 (1981) 124 Cal.App.3d 72 [177 Cal.Rptr. 183]; and
 
 In re Marriage of Cademartori
 
 (1981) 119 Cal.App.3d 970 [174 Cal.Rptr. 292], The rule in California now is that the statutory presumptions of community property where an asset is held in joint tenancy (Civ. Code, § 5110) can be overcome only by proof of an agreement or an understanding that a separate property interest was to be retained. (See
 
 In re Marriage of Lucas, supra,
 
 27 Cal.3d at pp. 814-815.)
 

 At trial, the court based its determination of the interests in both the family residence and the
 
 Cindy J.
 
 upon direct tracing. This is error under
 
 Lucas.
 
 The issues must be retried since there was disputed evidence whether the parties had an agreement or understanding that a separate property interest was to be retained by Richard.
 

 
 *61
 
 On remand, if the court finds an agreement or understanding, Richard’s theory of tracing based on purported availability of separate property funds in the
 
 Cindy J.
 
 bank account must still be rejected. Tracing requires proof that separate property funds were actually used to purchase the property at issue; the mere availability of separate property funds is insufficient.
 
 (In re Marriage of Marsden
 
 (1982) 130 Cal.App.3d 426, 440-446 [181 Cal.Rptr. 910];
 
 see Estate of Murphy
 
 (1976) 15 Cal.3d 907, 909 [126 Cal.Rptr. 820, 544 P.2d 956].)
 

 The trial court, in its memorandum of intended decision of December 5, 1978, found the fair market value of the
 
 Cindy J.
 
 to be $90,000. On March 9, 1979, before judgment was rendered, Sara filed a motion for “reconsideration of boat value” asserting that Richard had sold the
 
 Cindy J.
 
 for $140,000. The court denied the motion stating it could “find nothing in the authority submitted by petitioner that would justify an evaluation date other than the date of trial.” Sara contends that the court erred when it determined that it lacked jurisdiction to assign a value to the
 
 Cindy J.
 
 as of any date other than the date of trial. She correctly relies on
 
 In re Marriage of Olson
 
 (1980) 27 Cal.3d 414, 422 [165 Cal.Rptr. 820, 612 P.2d 910], decided after the trial herein, which held that it was an abuse of discretion for the trial court to deny a motion to reopen for a more current determination of a house’s value following a foreclosure sale between the date of tentative decision and the final judgment. (See also
 
 In re Marriage of Rives
 
 (1982) 130 Cal.App.3d 138, 152-153 [181 Cal.Rptr. 572].) The proper remedy for this error is to remand the cause for revaluation, including the determination of any postseparation interests of husband in the vessel and consideration of any tax consequences of the sale.
 

 Sara also contends that she was entitled to a portion of the postseparation gross receipts of $117,000 from Richard’s use of the
 
 Cindy J.
 
 as a commercial fishing vessel. The court’s memorandum of intended decision and subsequent findings and judgment made no reference to this income, even though Sara proposed a finding on this point. This issue must also be addressed on remand. Its resolution depends upon the court’s determination of what community property interest, if any, the parties had in the
 
 Cindy J.
 

 In February 1977, subsequent to the separation of the parties, Richard purchased a residence on Lee Ann Drive, making a down payment of $16,000 and taking title as an unmarried man, even though there had not yet been either an interlocutory or final judgment of dissolution of the marriage. Sara contends the trial court erred in failing to order any disposition of this property. Since the property was acquired subsequent to the filing of the dissolution action, her petition did not mention this property and she never moved to amend to include it for disposition by the court. At trial, Sara’s counsel did cross-examine Richard concerning the property but still neglected to amend the pleadings.
 
 *62
 
 (Compare
 
 In re Marriage of Denney
 
 (1981) 115 Cal.App.3d 543, 556-557 [171 Cal.Rptr. 440] [request for payment of attorneys’ fees in trial brief constituted amendment to pleadings].) Since the cause must be remanded for further proceeding on other issues, Sara may now move to amend the pleadings to seek disposition of the Lee Ann Drive property.
 

 The trial court ordered in its interlocutory judgment of dissolution that Richard should pay Sara the sum of $1,000 per month for spousal support for one year, $750 per month for an additional year, and $500 a month for a third year. No reservation of jurisdiction was thereafter retained. Sara contends that the court erred both in ordering substantive stepdowns and in failing to retain jurisdiction beyond a 12-month period after the last stepdown. The parties agree that due to an apparent clerical error, the court failed to include in its judgment an additional 12-month retention of jurisdiction over spousal support as it had provided in its memorandum of intended decision, and agree that the judgment should be modified accordingly.
 

 As to the stepdowns, there was insufficient evidence that Sara’s earning capacity would increase or her needs decrease or that Richard’s ability to pay would decrease during the three-year period.
 
 (In re Marriage of Smith
 
 (1978) 79 Cal.App.3d 725, 739-740 [145 Cal.Rptr. 205].) The only such evidence was Sara’s testimony that it would take at least one year for her to be retrained as a secretary. But she did not, as implied by Richard, testify that such retraining would increase her earning capacity; she testified only that she planned to retrain for office work because the poor condition of her feet and legs prevented her from continuing to work as a waitress.
 

 There was some evidence that Sara’s needs would decrease after the first year: she testified that retraining would take “at least a year” and that “with my schooling” she would require $1,000 per month in support. However, there was no evidence as to
 
 how much
 
 her needs would decrease after schooling was no longer required. Thus the $250 per month second year stepdown (implying schooling costs of $3,000) was unsupported by any evidence of a specific decrease in need. The third year stepdown lacked any supporting evidence at all.
 

 Since we have determined there must be a retrial on every other significant issue in the case, we deem it appropriate for the trial judge upon retrial to redetermine what spousal support order should be made. On remand, spousal support for the three-year period shall be fixed at $1,000 per month unless Richard establishes what changes, if any, should have been made in the circumstances of the parties as they existed during the three years encompassing the substantive stepdown. Since Richard did not appeal from the spousal support order, in no event shall Sara receive less than the monthly amounts accrued under the original order. The order for spousal support contained in
 
 *63
 
 the interlocutory judgment has not been stayed during the appeal and will remain in effect, except the court shall retain jurisdiction over the issue of spousal support until the entry of judgment on that issue following its retrial. This is without prejudice to either party making motions with regard to spousal support pending retrial.
 

 Sara also challenges the court’s determination that there was insufficient evidence of a
 
 Marvin
 
 agreement during the parties’ period of cohabitation before marriage. As Richard correctly points out, however, this claim is to be rejected, because Sara did not file an independent civil action on the basis of an alleged
 
 Marvin
 
 agreement. The provisions of the Family Law Act do not govern the distribution of such property and the trial court thus lacked jurisdiction over her
 
 Marvin
 
 claim. (Cal. Rules of Court, rules 1211-1212;
 
 Marvin
 
 v.
 
 Marvin
 
 (1976) 18 Cal.3d 660, 665, 681 [134 Cal.Rptr. 815, 557 P.2d 106].) Sara is not precluded from filing a
 
 Marvin
 
 action and moving to consolidate it with this action.
 

 When she filed her petition for dissolution Sara also filed an order to show cause seeking temporary spousal support which was heard December 20,1976. Sara’s income and expense declaration disclosed net monthly income of $400 per month and $670 of expenses, while Richard’s showed expenses of $1,352 and stated the following as to income: “Unknown—Note: Husband’s income varies so widely from month to month, that we cannot give an accurate amount. Some months there is no income, some months there is as much as $1,000 gross.” Based upon this evidence, the trial court awarded Sara temporary spousal support of $100 per month beginning with the month of December 1976.
 

 As a result of subsequent pretrial discovery, Sara learned that Richard had deposited $23,000 more into his bank account than his business records disclosed and, additionally, that he had gross receipts of $117,000 from January 1, 1977, through March 1977. (The trial court’s memorandum of intended decision filed Dec. 5, 1978, noted that Richard’s adjusted gross income for the year 1977 was $76,181.) Contending that Richard had not fully disclosed his income or assets at the time of the initial order to show cause, Sara brought a motion in March 1977, for an upward modification of temporary spousal support to the amount of $500 per month. For reasons we cannot ascertain from the record, the matter was repeatedly continued and not ruled upon by the court. Sara therefore filed an additional motion for an increase in spousal support on May 2, 1977, requesting $1,000 per month for temporary spousal support. Trial was set at that time for May 24, 1977, and the motion was continued by the court to the time of trial. However, trial did not actually commence until April 12, 1978, almost one year later. In September 1977, Sara filed yet another motion to increase temporary spousal support which, again for
 
 *64
 
 reasons the record fails to disclose, was continued five times. The matter was finally heard, with other motions, on November 21, 1977, but the court did not rule on Sara’s motion for upward modification of temporary spousal support. Trial finally commenced on April 12, 1978, but the court had still not decided the case by November 1978, so Sara again renewed her motion for an increase in temporary support. The motion was continued two additional times and finally heard on November 20, 1978. As part of this hearing, Richard claimed an offset of $1,800 for rental income from community property received by Sara between the date of separation and the date of trial.
 

 Even if Richard were entitled to such a credit, it would only be $900, as the income would be community property. But it appears from the record that the original temporary spousal support order of $100 a month was based on Sara’s income and expense declaration showing she was receiving $100 per month in rental income. Since the court considered this in making its original temporary spousal support order, Richard was not entitled to any credit for the rental income she received.
 

 In any event, the conduct of the trial court in failing to hear and act upon Sara’s repeated requests for an upward modification based upon a clear change of Richard’s financial circumstances was not only error, but grievous error. To this day, the court still has never issued a formal order acting on these motions, but we deem them to have been erroneously denied. On remand the court is directed to conduct forthwith a hearing of Sara’s motions for upward modification of temporary spousal support.
 

 The interlocutory judgment of dissolution is affirmed as to its termination of marital status, the valuation and award of household furniture, furnishings and appliances, vehicles and trailers, and the award of spousal support (excluding its substantive stepdown provisions), attorneys’ fees and costs ordered at trial, but is reversed in all other respects. The memorandum of intended decision and the interlocutory judgment of dissolution are treated as an order denying petitioner’s motion for an upward modification of temporary spousal support and that order is also reversed. The cause is remanded for further proceedings in accordance with the views expressed in this opinion.
 

 Low, P. J., and Haning, J., concurred.
 

 On June 9, 1983, the opinion was modified to read as printed above.