[No. G007591. Fourth Dist., Div. Three. Sept. 28, 1990.]

In re the Marriage of MARY ANN and ALBERT HAHN.
MARY ANN HAHN, Respondent, v.
ALBERT HAHN, Appellant.

COUNSEL

Robert E. Willard for Appellant.

Marjorie G. Fuller for Respondent.

OPINION

CROSBY, J.—In this action for dissolution of the parties' marriage, husband sought to have the family home sold and the proceeds divided. He stipulated to the value of the residence set by his own appraiser. Nevertheless, the court acceded to wife's request that the property be awarded to her with appropriate offsets. After trial but before entry of judgment, husband moved to reopen with evidence of higher and more recent comparable sales figures. The court declined and he appeals. We affirm.

I

Based on the parties' oral stipulation at trial on July 13, 1988, the court determined the community home was worth $179,000.[1] At oral argument

---

[1] In an exhibit attached to one of husband's declarations, he was willing to stipulate the value of the house was $171,400. This was apparently a net figure, however. The appraiser he

before us, counsel for husband bluntly stated there was no pretrial stipulation concerning its value. That claim is thoroughly belied by the appellate record, and we will not dignify it with further comment.

■ Husband maintains he should have been allowed to reopen the trial and present evidence that the home was actually worth $225,000, based on more recent sales of comparable properties.[2] ■ But in the usual case a party may not unilaterally avoid a valid stipulation for obvious reasons: "A stipulation is an agreement between attorneys for adverse parties relating to a matter involved in a judicial proceeding. It may relate to evidence or facts, and . . . it results in a judicial admission removing issues from the case." (See 1 Witkin, Cal. Evidence (3d ed. 1986) § 648, p. 633 and cases cited; see also *In re Marriage of Carletti* (1975) 53 Cal.App.3d 989, 993, fn. 2 [126 Cal.Rptr. 1] [stipulation made in open court has "the same force and effect as would a written property settlement agreement executed by the parties prior to trial"].) There is a salutary reason for supporting stipulations against ensuing attack in most instances: "Stipulations . . . serve the convenience of the parties to litigation and often serve to simplify and expedite the proceeding [and] are supported by the policy of favoring compromise in order to reduce the volume of litigation." (Rest.2d Contracts, § 94, com. a, at p. 254.)

Parties frequently stipulate because values are difficult to ascertain and expensive to prove and certainty is desirable. Additionally, stipulations are often the product of compromise. ■ To allow husband to escape a part of his bargain might lead wife to renege on the stipulated values regarding other community assets and result in a full-blown trial of a case that was, for the most part, amicably settled previously.

Husband relies on *In re Marriage of Olson* (1980) 27 Cal.3d 414 [165 Cal.Rptr. 820, 612 P.2d 910], arguing the court's failure to reopen resulted in an unequal division of the community property. (See Civ. Code, § 4800.) In *Olson* wife received the family residence as part of the property distribution. After trial but before judgment was entered, the house was sold at a nonjudicial foreclosure sale, essentially rendering her portion of the distribution worthless. The court held, "[O]nce the trial court had been informed, prior to issuance of its interlocutory decree, that there had been a

---

retained originally pegged the value at $179,000, the figure accepted by wife and the court, based on sales of comparable homes within seven months before the July 1988 trial.

[2] Husband offered to prove the following additional sales at the posttrial motion: July 3, $211,000; August 9, $213,500; August 18, $217,500; and October sales of $211,000 and $219,500. He also had two experts available, a real estate broker and an appraiser, who would testify that as of the date of trial and the motion to reopen, the home was valued between $220,000 and $225,000.

substantial change in the nature of the community property occasioned by the forced sale of the family residence, the court was obliged, in conformity with section 4800 of the Civil Code, either to redistribute equally the residue of the property then remaining in the community, or, alternatively, find applicable one of the statutory exceptions which permitted an unequal distribution." (27 Cal.3d at p. 422.) Nothing quite so dramatic has occurred here, of course.

■ *Olson* might control had wife lost the property or sold it at a substantially increased price before final judgment was entered: "A motion for reconsideration of value should be granted where a community asset is sold by one spouse before entry of judgment, for a much higher price than valued by the court in its tentative decision. [*In re Marriage of Johnson* (1983) 143 Cal.App.3d 57, 61 (191 Cal.Rptr. 545).] [¶] It is even appropriate to reconsider the parties' *stipulated value* where, after appellate reversal of the property division award but prior to remand, the asset has been sold for a far greater price. ■ ■ Here, the court should exercise its discretion [to] relieve a party from the stipulation and take evidence on the *current* fair market value, even though reversal was not on the valuation issue. [*In re Marriage of Reilley* (1987) 196 Cal.App.3d 1119, 1124-1125 (242 Cal.Rptr. 302).]" (Hogoboom & King, Cal. Practice Guide: Family Law (1990) § 8:308.3 rev. #1, 1989; see also *In re Marriage of Rives* (1982) 130 Cal.App.3d 138, 152-153 [181 Cal.Rptr. 572] [community business awarded to husband was damaged by wife's posttrial neglect, and the court abused its discretion in failing to reopen on the issue of diminished value].)[3]

■ But there was no intervening sale, forfeiture, or any change in the nature of the family home here. Consequently, the proffered evidence did not *require* the court to afford husband an opportunity to unilaterally rescind his stipulation. That was a discretionary call. No case husband cites convinces us that a posttrial revaluation of an asset, as opposed to confirmation of its value by sale or other disposition, gives a party the right to prolong the uncertainty of the litigation process until the final decree is entered.

As wife points out, California real estate values are historically subject to change (sometimes even downward). By husband's logic either party could automatically reopen whenever the real estate market fluctuates after trial but before final judgment. Other assets would be similarly affected. The

---

[3] The final decree was filed October 21, 1988. We disagree with wife to the extent she complains the motion to reopen or reconsider, filed almost three months after the court's tentative decision, was untimely: Before final judgment, "[t]he decision to reopen a case for the introduction of further evidence lies largely within a trial court's discretion. [Citations.]" (*In re Marriage of Olson, supra*, 27 Cal.3d at p. 422.)

price of a share of stock, for example, might gyrate radically on a daily basis.

Should a family law court be required to take new evidence and to continually redistribute community assets until the moment a judgment is formally entered? The answer is obviously no. Such a policy would wreak havoc with the efficient operation of the courts and disrupt the settled expectations of the parties. We do not think *Olson* or the cases following it require that. Where an asset has arguably increased in value under circumstances similar to those present here and has not been sold, the spouse retaining the asset is still at risk of further fluctuation one way or the other. The court is under no obligation to undertake a continuing responsibility to assume the role of an on-call broker or real estate appraiser when that is the case. And while we agree with husband that this problem would not have surfaced had the court ordered the house sold and the proceeds divided, as he originally requested, it was within the court's broad discretion to award the house to one spouse with an appropriate offset.

The court cannot be faulted for a party's failure to properly investigate or estimate the value of an asset. Husband supplied the appraisal and agreed with wife to accept its valuation of the family home. Surely he assumed any risk that his own appraisal was faulty. ■ It is hornbook law that one party's mistaken belief is insufficient to justify relieving him of his obligation under these circumstances: "A party bears the risk of mistake when [¶] . . . he is aware, at the time the contract is made, that he has only limited knowledge with respect to the fact to which the mistake relates but treats his limited knowledge as sufficient."[4] (Rest.2d Contracts, § 154(b).) In sum, the lower court was well within its prerogative to deny husband's motion to be relieved of his stipulation.

## II

■ We decline wife's request for sanctions for a frivolous appeal, however. *Olson* and the other cases cited could be read broadly to provide some support for husband's position. We cannot say "any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) And wife may apply for attorney fees in the trial court upon return of the remittitur, and be entitled to them, on an appropriate showing

[4] In his declaration supporting the posttrial motion husband stated he "strongly disagreed" with his first counsel's acceptance of the appraisal. His complaint should have been made in a different quarter. A client's inchoate reservation is hardly a basis to set aside a stipulation agreed to by the other side and approved by the court.

of need. (*In re Marriage of Newport* (1984) 154 Cal.App.3d 915 [201 Cal.Rptr. 647].)

Judgment affirmed. Respondent is entitled to costs on appeal.

Wallin, Acting P. J., and Moore, J., concurred.